IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES SMITH, individually and on behalf of two classes of similarly-situated individuals, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. GLR-20-2598 |
| OLIVERI & ASSOCIATES, LLC, et al., | * | |
| | * | |
| Defendants. | | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Oliveri & Associates, LLC and John Oliveri's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, or in the Alternative, for Summary Judgment (ECF No. 18). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021).[1] For the reasons set forth below, the Court will deny the Motion, which it construes as a motion to dismiss.

## I.    BACKGROUND[2]

### A.    Factual Background

Plaintiffs' First Amended Class Action Complaint (the "Amended Complaint") alleges wrongdoing on the part of Defendants as to Plaintiffs James and Kuru Smith and

---

[1] The Court recognizes that Defendants have requested a hearing on the Motion. Having determined that no hearing is necessary to understand the issues underlying the Motion, the Court will deny the request.

[2] Unless otherwise noted, the Court takes the following facts from the First Amended Class Action Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

separately as to Plaintiff Keisha Grant. The Court will separately recount the allegations regarding the two groups of Plaintiffs.

**1.     James and Kuru Smith**

The Smiths purchased a condominium unit in or around February 2005 (the "Smith Property"). (First Am. Class Action Compl. ["Am. Compl."] ¶ 16, ECF No. 14). The Smith Property is part of a condominium regime known as the Montgomery Woods Condominium, Inc. ("Montgomery Woods"). (Id. ¶ 17). In conjunction with their purchase of the Smith Property, the Smiths entered into a contract with Montgomery Woods through which they agreed to be bound by a Declaration of Covenants and Bylaws ("Montgomery Governing Documents"). (Id. ¶ 18). The Montgomery Governing Documents required the Smiths to pay certain regular assessments. (Id. ¶ 19). In or around October 2012, the Smiths failed to pay their required assessments. (Id. ¶ 21). In August 2013, Defendants entered a lien against the Smith Property on behalf of Montgomery Woods in the amount of $2,537.71 (the "Smith Lien"). (Id. ¶¶ 22–23). The Smith Lien purported to secure amounts payable from October 2012 through December 2013 and derived its authority from the Montgomery Governing Documents and the Maryland Contract Lien Act, Md. Code Ann., Real Prop. § 14-201 et seq. ("MCLA"). (Id. ¶¶ 23, 25). The Smith Lien, however, extended to sums "becoming due" after the lien was entered, "including but not limited to monthly assessments, special assessments, late fees, interest, attorneys' fees, costs of collection, fines, violations and non-sufficient funds fees." (Id. ¶ 26).

In the years after entering the Smith Lien, Defendants agreed to multiple payment plans with the Smiths, including a payment plan the parties entered into in December 2018

as part of a settlement agreement. (Id. ¶¶ 35–36). Through these payment plans, the Smiths have paid more than the face value of the lien. (Id. ¶ 38). Over the years, however, Defendants continued to add legal and other fees to the Smiths' debt. (Id. ¶ 40). In or around July 2014, a Maryland court entered a judgment against the Smiths encompassing the time period of the Smith Lien. (Id. ¶ 46). Defendants marked that judgment paid and satisfied in May 2017. (Id.). Despite that, Defendants continued to seek assessments from the Smiths for amounts totaling over $30,000, purportedly authorized by the Smith Lien. (Id. ¶ 50). In July 2019, Defendants notified the Smiths of their intent to foreclose on the Smith Property. (Id. ¶ 51).

**2.    Keisha Grant**

In March 2007, Grant bought a home in Owings Mills, Maryland (the "Grant Property"). (Id. ¶ 59). The Grant Property is part of a homeowners' association known as the Queen Anne Village Association, Inc. ("QAVA"). (Id. ¶ 60). In conjunction with her purchase of the Grant Property, Grant entered into a contract with QAVA and agreed to comply with the community's governing documents ("QAVA Governing Documents"), which required her to pay regular assessments. (Id. ¶¶ 61–62). In 2010, Grant fell behind on her assessments in an amount under $200. (Id. ¶ 64). In May 2010, Defendants notified Grant of their intent to assert a lien against her in the amount of $849.29, which they claimed they were owed for unpaid assessments in April and May 2010. (Id. ¶ 65). The following month, Defendants entered a lien against the Grant Property on behalf of QAVA in the amount of $849.29 (the "Grant Lien"). (Id. ¶ 66). The Grant Lien purported to secure amounts payable from April 2010 through June 2010 and derived its authority from the

QAVA Governing Documents and the MCLA. (Id. ¶ 67, 73). The Grant Lien, however, extended to sums "becoming due" after the lien was entered, "including but not limited to monthly assessments, special assessments, late fees, interest, attorneys' fees, costs of collection, fines, violations and non-sufficient funds fees." (Id. ¶ 70).

In July 2014, Grant filed for bankruptcy. (Id. ¶ 80). In that Chapter 13 bankruptcy proceeding, Defendants filed a proof of claim asserting that Grant owed $11,466.32 under the Grant Lien. (Id. ¶ 81). Grant was discharged from the bankruptcy proceeding on August 28, 2018, after completing the Chapter 13 plan. (Id. ¶ 82). In the final report issued by the trustee in the bankruptcy proceeding, the trustee listed the debt to QAVA as discharged. (Id. ¶ 83). Despite that, Defendants claimed in 2018 that the Grant Lien continued to secure nearly $19,000. (Id. ¶ 85). Further, notwithstanding the bankruptcy discharge and continued payments by Grant, Defendants informed Grant in October 2020 that she owed $2,768.40 under the Grant Lien. (Id. ¶¶ 85, 86).

**B.   Procedural History**

On September 9, 2020, Plaintiffs James and Kuru Smith filed this class action lawsuit against Defendant Oliveri & Associates, LLC. (ECF No. 1). On October 26, 2020, Oliveri & Associates, LLC filed a Motion to Dismiss (ECF No. 6). On November 5, 2020, Plaintiffs moved to stay this action pending the outcome of In re Walker, 248 A.3d 981 (Md. 2021), which was then awaiting ruling by the Maryland Court of Appeals. Plaintiffs noted that the case involved whether "a community association's lien perfected under the [MCLA] [can] secure unpaid damages, costs of collection, late charges, and attorney's fees arising under the association's governing documents that accrue subsequent to the

recordation of the lien." (Pls.' Mot. Stay Alt. Extension Time at 1–2, ECF No. 8). Plaintiffs argued that the Court of Appeals' decision "is central to both Plaintiffs' claims and Defendant's defenses, and the Court of Appeals' opinion on this issue of Maryland law will likely impact the outcome of this matter." (Id. at 2). The Court granted the Motion to Stay. (ECF No. 9).

On April 1, 2021, Plaintiffs notified this Court that the Court of Appeals had issued its decision in In re Walker. (ECF No. 10). The parties then filed a joint status report noting Plaintiffs' intention to file an amended complaint and Defendants' intention to file a renewed motion to dismiss. (ECF No. 12). The Court approved the parties' proposal. (ECF No. 13).

On May 25, 2021, Plaintiffs filed their First Amended Class Action Complaint, through which they added Plaintiff Keisha Grant and Defendant John Oliveri as parties to the action. (ECF No. 14). The Amended Complaint alleges: violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (Count I); violation of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law ("CL") § 14-201 et seq. (Count II); and violation of the Maryland Consumer Protection Act ("MCPA"), CL § 13-301 et seq. (Count III). (Am. Compl. ¶¶ 118–53). Plaintiffs seek actual and compensatory damages, statutory damages, litigation costs and attorneys' fees, pre- and post-judgment interest, and certification of the proposed classes. (Id. at 25).

On June 29, 2021, Defendants filed a Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, or in the Alternative, for Summary Judgment (ECF No. 18). On July 27, 2021, Plaintiffs filed an Opposition (ECF No. 21). Defendants filed a Reply on

August 10, 2021. (ECF No. 22). Plaintiffs filed a Notice of Supplemental Authority on September 2, 2021. (ECF No. 26).

## II.   DISCUSSION

### A.   <u>Standard of Review</u>

#### 1.   **Conversion**

Defendants style their Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. "A motion styled in this manner implicates the Court's discretion under Rule 12(d) . . . ." <u>Pevia v. Hogan</u>, 443 F.Supp.3d 612, 625 (D.Md. 2020). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." <u>Wells-Bey v. Kopp</u>, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, <u>Federal Practice & Procedure</u> § 1366, at 159 (3d ed. 2004)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and "a reasonable opportunity for discovery." <u>Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.</u>, 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice

that conversion under Rule 12(d) may occur. <u>See</u> <u>Moret v. Harvey</u>, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing <u>Laughlin v. Metro. Wash. Airports Auth.</u>, 149 F.3d 253, 260–61 (4th Cir. 1998)). The Court "does not have an obligation to notify parties of the obvious." <u>Laughlin</u>, 149 F.3d at 261.

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." <u>E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.</u>, 637 F.3d 435, 448 (4th Cir. 2011). Yet "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" <u>Harrods Ltd. v. Sixty Internet Domain Names</u>, 302 F.3d 214, 244 (4th Cir. 2002) (quoting <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 961 (4th Cir. 1996)). To successfully raise the need for additional discovery, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." <u>Hamilton v. Mayor of Balt.</u>, 807 F.Supp.2d 331, 342 (D.Md. 2011). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." <u>Ingle ex rel. Estate of Ingle v. Yelton</u>, 439 F.3d 191, 195 (4th Cir. 2006) (quoting <u>Strag v. Bd. of Trs., Craven Cmty. Coll.</u>, 55 F.3d 943, 954 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Despite these holdings, the Fourth Circuit has indicated that there are some limited circumstances in which summary judgment may be premature, notwithstanding the non-movants' failure to file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[] as the functional equivalent of an affidavit." Id. at 244–45 (quoting First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1380 (D.C. Cir. 1988)).

Plaintiffs argue that it would be premature to construe Defendants' Motion as one for summary judgment because they have not had a reasonable opportunity for discovery. In addition, counsel for Plaintiffs has submitted an affidavit, in accordance with Rule 56(d), setting forth several detailed categories of discovery that could establish a genuine issue of material fact in this dispute.

Through their Opposition and the attached affidavit, Plaintiffs identify an array of information that could prove essential to their claims against Defendants. For instance, Plaintiffs note that although Defendants attach certain correspondence to their Motion, it does not reflect the full record of correspondence. (Decl. Courtney Weiner Supp. Pls.' Req.

Disc. Pursuant Fed.R.Civ.P. 56(d) ["Weiner Decl."] ¶¶ 5–6, ECF No. 21-1). Plaintiffs also note that Defendants' accounting does not appear to be consistent across the records they attach to their Motion, and that the records don't provide complete information regarding the source of the fees set forth therein. (Id. ¶¶ 7–8). Plaintiffs argue that they require discovery to gain additional evidence concerning irregularities in Defendants' disbursement and application of payments and to garner evidence of Defendants' knowledge and intent. (Id. ¶¶ 11–15). Defendants did not respond to Plaintiffs' request for discovery.

The Court is satisfied that the evidence sought by Plaintiffs could establish one or more genuine disputes of material fact sufficient to defeat summary judgment. Accordingly, the Court will construe Defendants' Motion as a motion to dismiss under Rule 12(b)(6) and will not consider material outside the pleadings in rendering a decision.

### 2.     Rule 12(b)(6) Standard

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

## B.   Analysis

### 1.   FDCPA

Defendants first ask the Court to dismiss Plaintiffs' claims under the FDCPA. The FDCPA is a strict liability statute that safeguards consumers from abusive, coercive, and deceptive debt collection practices by debt collectors. See 15 U.S.C. § 1692k(a); Spencer v. Hendersen-Webb, Inc., 81 F.Supp.2d 582, 590–91 (D.Md.1999). To state a claim under the FDCPA, a plaintiff must allege that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt [] collector as defined by

the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." Sterling v. Ourisman Chevrolet of Bowie Inc., 943 F.Supp.2d 577, 585 (D.Md. 2013) (alteration in original) (quoting Stewart v. Bierman, 859 F.Supp.2d 754, 759–60 (D.Md. 2012)). For purposes of the FDCPA, a "debt collector" is an entity that "regularly collects or attempts to collect, directly or indirectly, [consumer] debts owed [to] another." Heintz v. Jenkins, 514 U.S. 291, 294 (1995) (quoting 15 U.S.C. § 1692a(6)) (cleaned up).

Neither party disputes that Plaintiffs were subject to collection activity related to a consumer debt or that Defendants are debt collectors as defined by the FDCPA. Rather, the parties disagree as to the legality of Defendants' debt collection practices. Plaintiffs allege that Defendants employed two distinct debt collection practices that violated various provisions of the FDCPA. First, Plaintiffs assert that Defendants violated §§ 1692f(1) and  1692e(2), (4), (5), and (10) by pursuing debt collections for amounts not authorized by Maryland law, any agreement, or the relevant Governing Documents. Second, Plaintiffs allege that Defendants violated § 1692e(2) and (10) by representing that Defendants had a valid security interest in their homes. According to Plaintiffs, Defendants knew or should have known that under the MCLA, they were not entitled to collect fees and charges arising from debts accrued under a continuing lien. Defendants' efforts to collect those debts were, therefore, misleading and violated §§ 1692e and 1692f.

In In re Walker, the Maryland Court of Appeals found that a community association's lien perfected under the MCLA may not "secure unpaid damages, costs, charges, and fees which accrue after the recordation of the lien." 248 A.3d at 984 (emphasis added). Considering a lien very similar to the one at issue in this case, the Court of Appeals

held that a "continuing lien" of this nature "does not comport with a common sense reading of the plain text of the [MCLA]." Id. at 990. Rather, the MCLA "limits sums that can be secured by the lien to unpaid damages, costs, and fees due under contract" and does not include "future damages, costs and fees that have yet, and may never materialize." Id. at 993.

Defendants argue that they have not violated the FDCPA because their actions were legal and in accord with the MCLA until the In re Walker decision. Thus, all of Defendants' arguments appear to turn on whether the Court of Appeals' decision in In re Walker was the law before March 2021, i.e., whether In re Walker applies retroactively.[3] At bottom, the Court is unpersuaded by Defendants' arguments and will deny the Motion.

Judicial interpretations of statutes generally apply retroactively. A recent decision by another federal court helpfully set forth the Supreme Court guidance on this issue:

> The Supreme Court has long recognized that judicial interpretations of statutes generally apply retroactively. See Harper v. Virginia Dept. of Taxation, 509 U.S. 86, 97 (1993) ("When [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of

---

[3] Defendants imply that because In re Walker applied to the MCLA rather than the FDCPA, it does not bear on Count I. (See Defs.' Mem. Law Supp. Mot. Dismiss Pls.' First Am. Class Action Compl. Alt. Summ. J. ["Mot."] at 18–19, ECF No. 18-1). This argument misses the mark. The gravamen of Plaintiffs' allegations is that because Defendants' continuing liens were unlawful under the MCLA, its assertions that Plaintiffs owed debts under the continuing liens were false and misleading. In other words, a finding that the continuing liens were unlawful under the MCLA, insofar as it attempted to collect amounts accruing after the liens were imposed, would render Defendants' assertions that Plaintiffs owed those amounts false and misleading and therefore violative of the FDCPA. Thus, the fact that In re Walker does not directly interpret the FDCPA does not dilute its relevance to the Court's analysis.

> whether such events predate or postdate our announcement of the rule."); <u>Rivers v. Roadway Exp., Inc.</u>, 511 U.S. 298, 311–312 (1994) ("The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student.") (quoting <u>United States v. Security Industrial Bank</u>, 459 U.S. 70, 79 (1982)). This principle stems from the concept—articulated by the Court in <u>Marbury v. Madison</u>—that it is a court's power is to "say what the law is." 5 U.S. 137, 177 (1803). Thus, when the Court interprets a statute, "it is explaining its understanding of what the statute has meant continuously since the date when it became law." <u>Rivers</u>, 511 U.S. at 313 n. 12.

<u>Pavelka v. Charter Commc'ns, Inc.</u>, No. 3:20-CV-01557 (MPS), 2021 WL 5566390, at *6 (D.Conn. Nov. 29, 2021). The Court of Appeals of Maryland has adopted a similar rule. <u>See</u> <u>Polakoff v. Turner</u>, 869 A.2d 837, 850 (Md. 2005) ("[B]oth the federal rule and the general rule in Maryland is that a new interpretation of a statute applies to the case before the court and to all cases pending where the issue has been preserved for appellate review.").[4] Indeed, "[i]t is only when a decision 'constitutes a clear break with the past' that a question of prospective application arises." <u>Rockwell v. State</u>, No. 150, Sept. Term 2018, 2019 WL 3526447, at *4 (Md.Ct.Spec.App. Aug. 2, 2019) (quoting <u>Denisyuk v. State</u>, 30 A.3d 914, 923 (Md. 2011)), <u>cert. denied</u>, 219 A.3d 533 (Md. 2019). Moreover, even if Defendants were correct in asserting that the <u>In re Walker</u> decision represented a <u>change</u> in the law—as opposed to a clarification of a previously unresolved aspect of the law—Plaintiffs "would nevertheless be entitled to the benefit of that change in legal

---

[4] Defendants' citations to cases finding that "statutes are presumed to operate prospectively," <u>see</u> <u>Roth v. Dimensions Health Corp.</u>, 632 A.2d 1170, 1174 (Md. 1993), are unavailing. The MCLA is not a new statute; rather, <u>In re Walker</u> is a new decision interpreting a preexisting statute. In that situation, the Court of Appeals' interpretation applies retroactively.

interpretation because [they] had raised the same issue in [their] case." Hous. Auth. of Balt. City v. Lynch, No. 652, Sept. Term 2016, 2017 WL 2351493, at *7 (Md.Ct.Spec.App. May 31, 2017). Accordingly, there is no question that In re Walker applies retroactively and was the law applicable to actions taken by Defendants before the decision issued.

Defendants further argue that they could not be liable for violating the MCLA based on an interpretation of the statute that occurred after its purportedly unlawful actions. In other words, Defendants argue, because they operated on a good faith understanding that continuing liens were permitted under the MCLA, their efforts to collect debts pursuant to the continuing lien could not have been false or misleading under the FDCPA. But as set forth above, the FDCPA is a strict liability statute, "impos[ing] liability on any debt collector who fails to comply with any provision of the Act." Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 375 (4th Cir. 2012) (internal quotation marks omitted) (quoting 15 U.S.C. § 1692k(a)). A consumer must only prove one violation to trigger liability. Liversage v. Nationwide Debt Mgmt. Sols., LLC, No. ELH-15-1266, 2016 WL 106301, at *3 (D.Md. Jan. 11, 2016). "[T]hus, there is no need for a plaintiff to plead or prove that a debt collector's misrepresentation of a debt obligation was intentional." Vangorden v. Second Round, Ltd. P'ship, 897 F.3d 433, 437–38 (2d Cir. 2018). Rather, "[d]ebt collectors may not make false claims, period." Randolph v. IMBS, Inc., 368 F.3d 726, 730 (7th Cir. 2004). In other words, a debt collector may violate the FDCPA even if it unintentionally makes a false statement. Turner v. J.V.D.B. & Assocs., 330 F.3d 991, 995 (7th Cir. 2003) ("[U]nder § 1692e ignorance is no excuse."); Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996) ("[A] consumer need not show intentional

conduct by the debt collector to be entitled to damages."). But cf. Randolph, 368 F.3d at 730 ("In lieu of a scienter requirement, the FDCPA provides a defense 'if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" (quoting 15 U.S.C. § 1692k(c))).[5]

Defendants next argue that their efforts to collect on the basis of its continuing lien could not have been "false or misleading" because the United States Court of Appeals for the Fourth Circuit held in 2019 that continuing liens like the one at issue in this action were permissible under the FDCPA. See Archie v. Nagle & Zaller, P.C., 790 F.App'x 502, 504–06 (4th Cir. 2019). This argument fails for two reasons. First, the Archie decision, as well the decision by this Court that it affirmed, found that "Maryland law 'does not expressly permit or prohibit' continuing lien clauses." Id. at 505 (quoting Archie v. Nagle & Zaller, P.C., No. GJH-17-2524, 2018 WL 3475429, at *5 (D.Md. July 19, 2018)). Thus, the Fourth Circuit did not opine that Maryland law was settled on this subject. Second, Archie was an unpublished per curiam decision. Thus, it is not precedential on this Court and certainly

---

[5] Defendants have made clear they are not asserting a bona fide error defense in this case. (See Defs.' Reply Pls.' Opp'n Defs.' Mot. Dismiss Pls.' First Am. Compl. Alt. Summ. J. ["Reply"] at 7–8, ECF No. 22). Even if they did, however, "the defense does not immunize mistakes of law, even if the defendant relied on the advice of counsel, and the errors that may insulate a defendant from liability are generally limited to clerical mistakes." Spencer, 81 F.Supp.2d at 591 (citations omitted); see also Webster v. ACB Receivables Mgmt., 15 F.Supp.3d 619, 626 (D.Md. 2014) (noting that the bona fide error defense has been construed to apply to "clerical for factual mistakes, but not to FDCPA violations that result from a debt collector's incorrect interpretation of the Act's requirements.").

did not purport to resolve Maryland law. For these reasons, the decision of the <u>Archie</u> Court does not insulate Defendants for their failure to comply with the MCLA.

Finally, the FDCPA is a remedial statute. <u>Russell v. Absolute Collection Servs., Inc.</u>, 763 F.3d 385, 393 (4th Cir. 2014). For such statutes, courts must adopt a "standard of liberal construction in order to accomplish Congress' objects." <u>Atchison, Topeka & Santa Fe Ry. Co. v. Buell</u>, 480 U.S. 557, 562 (1987) (quoting <u>Urie v. Thompson</u>, 337 U.S. 163, 180 (1949)) (cleaned up). Here, the Court finds that a retroactive application of the Court of Appeals' interpretation of the MCLA aligns with Congress's goals in passing the FDCPA.

Thus, the Court finds that the Court of Appeals' decision in <u>In re Walker</u> applies retroactively; that the FDCPA is a strict liability statute for which a debt collector remains liable for unintentional violations, including mistakes of law; that the Fourth Circuit's <u>Archie</u> decision does not insulate Defendants from liability; and that the remedial nature of the FDCPA augurs in favor of construing the law in a manner that protects consumers like Plaintiffs. The Court will deny Defendants' Motion as to Count I.

## 2.    Jurisdictional Argument

Defendants argue that to the extent Plaintiffs' FDCPA fails, the Court lacks subject-matter jurisdiction over Plaintiffs' remaining state law claims. The Court has denied Defendants' Motion as to Plaintiffs' FDCPA claim, and therefore will continue to exercise supplemental jurisdiction over Plaintiffs' state law claims.

3.      **MCDCA**

Defendants next move to dismiss Plaintiffs' claims under the MCDCA. Under the MCDCA, a debt collector may not "claim, attempt, or threaten to enforce a right with knowledge that the right does not exist." <u>Stewart</u>, 859 F.Supp.2d at 769 (quoting CL § 14-202(8)), <u>aff'd sub nom.</u>, <u>Lembach v. Bierman</u>, 528 F.App'x 297 (4th Cir. 2013). Thus, to state a claim under § 14-202(8) of the MCDCA, Plaintiffs must establish two elements: "(1) that [d]efendants did not possess the right to collect the amount of debt sought; and (2) that [d]efendants attempted to collect the debt knowing that they lacked the right to do so." <u>Lewis v. McCabe, Weisberg & Conway, LLC</u>, No. DKC-13-1561, 2014 WL 3845833, at *6 (D.Md. Aug. 4, 2014).

"Maryland courts have consistently interpreted the MCDCA to require plaintiffs to allege that defendants acted with knowledge that the 'debt was invalid, or acted with reckless disregard as to its validity.'" <u>Lembach</u>, 528 F.App'x at 304 (quoting <u>Shah v. Collecto, Inc.</u>, No. DKC-2004-4059, 2005 WL 2216242, at *11 (D.Md. Sept. 12, 2005)); <u>see also</u> <u>Akalwadi v. Risk Mgmt. Alts., Inc.</u>, 336 F.Supp.2d 492, 511 (D.Md. 2004) (explaining that the plaintiff must show the defendant acted with actual knowledge or reckless disregard as to the falsity of the information to be liable under the MCDCA). In other words, "[u]nlike the FDCPA, the MCDCA is not a strict liability statute; to state a cognizable claim, the plaintiffs also must demonstrate that [the defendant] <u>knowingly</u>

attempted to collect an amount that included an unauthorized charge." <u>Ben-Davies v. Blibaum & Assocs., P.A.</u>, 421 F.Supp.3d 94, 100 (D.Md. 2019).[6]

Defendants argue that Plaintiffs cannot prevail on their MCDCA claim because Plaintiffs have not adequately alleged that Defendants knew the liens were invalid at the time they sought to enforce them, and that indeed Defendants could not have known the liens were invalid prior to the <u>In re Walker</u> decision. Defendants repeatedly reference this Court's decision in <u>Fontell v. Hassett</u>, 870 F.Supp.2d 395 (D.Md. 2012), in support of their Motion. Among other things, Defendants assert that this Court held in <u>Fontell</u> that "a defendant's good faith basis that the collection action was legal at the time collection was attempted precludes a claim under the MCDCA." (Mot. at 26 (citing <u>Fontell</u>, 870 F.Supp.2d at 408)). Plaintiffs counter that Defendants cannot escape liability based on their misunderstanding of the MCDCA's requirements because "the term 'knowledge' in the [MCDCA] does not immunize debt collectors from liability for mistakes of law." <u>Spencer</u>,

---

[6] Defendants argue that MCDCA claims are also subject to Rule 9(b)'s heightened pleading standard. Defendants are correct that this Court has previously imposed this requirement on MCDCA plaintiffs. <u>See, e.g.</u>, <u>Amenu-El v. Select Portfolio Servs.</u>, No. RDB-17-2008, 2017 WL 4404428, at *4 (D.Md. Oct. 4, 2017) ("[A]n MCDCA claim is subject to the heightened pleading standard."). As this Court more recently noted, however, "[t]he Fourth Circuit has not concluded that Rule 9(b)'s heightened pleading standard applies to MCDCA claims." <u>Gillis v. Household Fin. Corp. III</u>, No. GJH-18-3923, 2019 WL 3412621, at *8 (D.Md. July 29, 2019). Thus, the Court now holds that in light of the remedial nature of the MCDCA, and until some precedent binding on this Court requires otherwise, "[s]tatutory consumer protection claims, like claims under the MCDCA and portions of the MCPA based on non-fraudulent but unfair or deceptive conduct, are not required to be pled with particularity." <u>Id.</u> In any event, even if the Court were to find that MCDCA claims sound in fraud due to the MCDCA's knowledge requirement, "under Rule 9(b)'s heightened standard, 'knowledge[] and other condition[s] of mind of a person may be averred generally.'" <u>Id.</u> (quoting <u>Beuster v. Equifax Info. Servs.</u>, 435 F.Supp.2d 471, 480 (D.Md. 2006)).

81 F.Supp.2d at 594; <u>see also</u> <u>Fontell</u>, 870 F.Supp.2d at 407 ("If this Court were to find that Defendants' ignorance about the limitations period was a mistake of law, their professed lack of knowledge would not save them from liability under the MCDCA.").

The Court agrees with Plaintiffs. As an initial matter, the Court finds that Defendants have overstated this Court's holding in <u>Fontell</u>. While Defendants assert that <u>Fontell</u> held that "a defendant's good faith basis that the collection action was legal at the time collection was attempted precludes a claim under the MCDCA," in fact, the words "good faith" never appear in <u>Fontell</u>. Further, <u>Fontell</u> is readily distinguishable from the facts at bar. In <u>Fontell</u>, the defendants relied on a decision by a state court <u>ruling in their favor</u> and finding that their claims against the plaintiff—which later formed the basis for the plaintiff's MCDCA claim—were lawful and timely. <u>Id.</u> Armed with that decision, Defendants initiated a collection action, which a subsequent state court found was untimely and that defendants therefore were not entitled to the monies they sought. <u>Id.</u> at 407–08. That situation, the Court explained, was distinct from the "mistakes of law" that were generally insufficient to insulate a defendant from liability. <u>Id.</u>

These are not the facts in this case. Here, Defendants point to certain non-precedential decisions finding that continuing liens like the ones forming the basis for this case were lawful in Maryland. But these decisions did not create binding law and are clearly distinct from the specific judicial approval the <u>Fontell</u> defendants possessed. The Court is thus faced with a situation where the law under the MCDCA was unclear and where Defendants allegedly sought to conduct their business within the unresolved boundaries of the law. But "in the context of consumer protection, 'it does not seem unfair to require that

one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.'" Spencer, 81 F.Supp.2d at 595 (quoting Russell, 74 F.3d at 35).

Here, Defendants apparently thought and operated as though the MCDCA would be construed in such a manner as to make their actions lawful. They were incorrect. But the MCDCA's knowledge requirement does not immunize debt collectors from liability for mistakes of law. Because Defendants' argument in favor of dismissing Plaintiffs' MCDCA claim is essentially premised entirely on Defendants' lack of knowledge, the Motion cannot prevail.

Even if Defendants' mistake of law was sufficient for the Court to find that Plaintiffs could not meet the MCDCA knowledge requirement, any claims accruing after October 1, 2018 would survive pursuant to amendments to the MCDCA that went into effect on that date. Those amendments created CL § 14-202(11), which extends the MCDCA's prohibitions to proscribe "any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act." Thus, a violation of the FDCPA that occurred on or after October 1, 2018, is per se a violation of the MCDCA, and lacks any additional knowledge requirement. As set forth above, the Court has denied Defendants' Motion as to Plaintiffs' FDCPA claim. Accordingly, Plaintiffs' MCDCA claim must at least survive to the extent it is premised on violations of the FDCPA. For all these reasons, the Court will deny the Motion as to Count II.

**4.      MCPA**

"[V]iolating the MCDCA is a <u>per se</u> MCPA violation." <u>Reyes v. Manchester</u>

<u>Gardens Condo.</u>, No. PX-19-2643, 2020 WL 3791964, at *5 (D.Md. July 7, 2020) (citing

CL § 13-301(14)(iii)). Thus, because Plaintiffs' MCDCA claim survives Defendants'

Motion, so must Plaintiffs' claims under the MCPA. At this early stage of the litigation, no

further analysis is necessary. The Court will deny Defendants' Motion as to Count III.

## III.      CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Motion to Dismiss

Plaintiffs' First Amended Class Action Complaint, or in the Alternative, for Summary

Judgment (ECF No. 18). A separate Order follows.

Entered this 28th day of February, 2022.


_____
            /s/
George L. Russell, III
United States District Judge

21